## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | **CIVIL ACTION NO.** 3:17-cv-139-TCB-RGV |
| v. | ) ) | **COMPLAINT** |
| WENCOR GROUP, LLC, | ) ) ) | **JURY TRIAL DEMAND** |
| Defendant. | ) ) ) | |
| _____ | ) | |

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex, pregnancy, and to provide appropriate relief to Kenyetta Bowles ("Bowles"), who was adversely affected by such practices. The U.S. Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant Wencor Group, LLC, ("Defendant") subjected Bowles to unlawful discrimination by terminating her employment because she could not perform an atypical work task due to her pregnancy, in violation of Title VII.

1

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(1) and (3) ("Title VII"), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Newnan Division.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.     At all relevant times, Defendant has continuously been doing business in the state of Georgia and the city of Peachtree City, and has continuously had at least fifteen (15) employees.

2

5.     At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

6.     At all relevant times, and for approximately 79 days, Defendant and its supervisors directed Bowles' work, provided the equipment and place of work, and maintained the right to terminate Bowles' work relationship.

7.     At all relevant times, Defendant was a client of a temporary staffing company, Express Employment Professionals ("Express"), which placed workers, including Bowles, to work at Defendant's facility in Peachtree City, Georgia. Defendant interfered with Bowles' employment opportunities with Express by terminating her assignment.

## ADMINISTRATIVE PROCEDURES

8.     More than thirty days prior to the institution of this lawsuit, Bowles filed a charge with the Commission alleging violations of Title VII by Defendant.

9.     On July 10, 2017, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide

3

appropriate relief.

10.    On July 25, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11.    All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12.    Since at least September 30, 2015, Defendant has engaged in unlawful employment practices at its manufacturing facility in Peachtree City, Georgia, in violation of Sections 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-2(a)(1).

13.    On or about July 13, 2015, Bowles secured employment with Defendant through a temporary staffing company, Express. Express notified Bowles that she would be working in Defendant's warehouse as a picker/packer for 40 hours per week earning $11.00 per hour.

14.    Bowles reported to a Defendant supervisor, "Sally," who, in turn, reported to Defendant's Distribution Warehouse Manager, "Dale."

15.    Throughout her employment with Defendant, Bowles was pregnant.

4

She was approximately six months pregnant as of September 30, 2015, and her co-workers and supervisors were aware of her pregnancy.

16.     Bowles witnessed Sally notify Dale of her pregnancy.

17.     Bowles' job duties as a picker/packer involved filling customer orders of rubber bands called "O-rings" by picking, bagging, sealing and placing them in a box for shipping while standing at an individual station with a computer.

18.     The light nature and low impact of the work as a picker/packer allowed Bowles to perform her job duties without putting her pregnancy at risk.

19.     Approximately two weeks into her employment, Defendant assigned Bowles to operate one of two O-ring machines used to fill voluminous O-ring orders.

20.     In this position, Bowles filled customer orders from a sitting position by throwing individual O-rings continuously into the machine and pressing a pedal to seal each bag until the order was complete for shipment.

21.     Due to the light nature of the work as an O-ring machine operator, Bowles was able to perform the job duties without putting her pregnancy at risk.

22.     On or about September 30, 2015, Sally informed Bowles that she

5

would be starting a different job assignment.  Beginning that day, Bowles would be working on what Defendant termed the "put-wall" in a new building.

23.    The "put-wall" job entailed filling customer orders by picking up items from a section of bins and placing them on a wall of cubicles for employees from the shipping department to process and ship. Items that did not fit in the cubicle space on the wall were placed on a pallet, and shipping department employees would retrieve the items from the pallet as needed to process customer orders.

24.    Approximately two hours into her shift, Dale instructed Bowles to move a pallet containing items to be shipped to customers that had been located in the "put-wall" area for two days.

25.    Prior to September 30, 2015, Bowles' job duties had not included moving or lifting pallets and Bowles had never been instructed by Defendant to move or lift pallets.

26.    Bowles told Dale that she was unable to move the pallet due to medical restrictions imposed by her doctor due to her pregnancy and asked whether someone operating a forklift could move the pallet.

27.    Dale responded no and advised Bowles that if she was unable to

move the pallet, she should get a doctor's note detailing her restrictions or go home.

28.     Bowles immediately contacted her medical provider for assistance and, within minutes of Dale's request, submitted a doctor's note to Express which stated in part, "[Bowles] is to be on limited work restriction including no heavy lifting, pushing, or pulling greater than 10 lbs."

29.     Express communicated Bowles' restrictions to Defendant, and Defendant immediately terminated Bowles' employment, telling her that there was no light duty work available for her.

30.     Following her termination, Bowles continued to list herself on Express' availability list for job assignments. However, Defendant never rehired Bowles.

31.     Defendant has a policy that allows it to provide accommodations to non-pregnant employees with disabilities or who are otherwise temporarily unable to perform the essential functions of their jobs.

32.     Defendant has provided light duty assignments to non-pregnant employees who were temporarily disabled and/or unable to perform the essential functions of their jobs.

33.    Bowles' pregnancy was, at a minimum, an unlawful motivating factor in Defendant's decision to terminate her employment.

34.    The effects of the practices complained of above have been to deprive Bowles of equal employment opportunities and otherwise adversely affect her status as an employee because of her pregnancy.

35.    The unlawful employment practices complained of above were intentional.

36.    The unlawful employment practices complained of above were done with malice or with reckless indifference to Bowles' federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from terminating any employee because of their pregnancy or because they have medical restrictions relating to their pregnancy, and engaging in any other employment practice that discriminates on the basis of pregnancy.

B.    Order Defendant to institute and carry out policies, practices, and

programs which provide equal employment opportunities for pregnant employees and that eradicate the effects of its past and present unlawful employment practices.

      C.    Order Defendant to make Bowles whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices described above, including but not limited to reinstatement or front pay.

      D.    Order Defendant to make Bowles whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to job search and medical expenses, in amounts to be determined at trial.

      E.    Order Defendant to make Bowles whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

      F.    Order Defendant to pay Bowles punitive damages for its malicious and reckless conduct described above in amounts to be determined at trial.

G.     Grant such further relief as the Court deems necessary and proper in the public interest.

H.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully Submitted,

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANTONETTE SEWELL
Regional Attorney

LAKISHA DUCKETT-ZIMBABWE
Supervisory Trial Attorney

*s/ Sairalina Montesino*
SAIRALINA MONTESINO
(GA Bar #940665)
Trial Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Atlanta District Office
100 Alabama St. SW

10

Atlanta, Georgia 30303
Tel: 404-562-6842
Fax: 404-562-6905

ATTORNEYS FOR PLAINTIFF